IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT D. POLZER *an individual*, ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ALLEGHENY COUNTY; DANIEL ) <br> KOVACS, ) <br> Defendants. ) | <br> <br> <br> Civil Action No. 13-295 <br> Magistrate Judge Maureen P. Kelly <br> <br> Re: ECF Nos. 73, 74 <br> |

# **MEMORANDUM OPINION AND ORDER**

**KELLY, Magistrate Judge**

## I.  PROCEDURAL BACKGROUND

This case involves a prisoner civil rights action brought by Robert D. Polzer ("Plaintiff" or "Polzer") against Allegheny County (the "County") and Daniel Kovacs ("Kovacs"), a corrections officer at the Allegheny County Jail ("ACJ"), (collectively, "Defendants"). This action results from an alleged physical assault of Plaintiff by Kovacs at the ACJ. Plaintiff contends that the assault caused him to suffer physical injuries, placement in the Disciplinary Housing Unit and criminal charges that were eventually dismissed. He asserts claims for violations of the Eighth Amendment and Fourteenth Amendment to the United States Constitution, malicious prosecution, assault and battery as well as other related claims. (ECF No. 26).

The parties engaged in extensive discovery relative to the claims and defenses. On December 12, 2013, this Court conducted a lengthy status conference with counsel and issued a Pretrial Order scheduling the trial of this case to commence on April 7, 2014. (ECF Nos. 43, 46).

On February 24, 2014, during a telephone status conference with Attorney Kenneth Fryncko ("Fryncko"), counsel for Plaintiff, and Attorney Stanley Winikoff ("Winikoff"), counsel for Defendants, this Court raised the possibility of settling this case. Fryncko represented to the Court that he would be meeting with Plaintiff later that week at SCI-Smithfield and would raise the issue with his client at that time.[1]

On March 4 and 5, 2014, the Court conducted telephone status conferences with Fryncko and Winikoff relative to settlement. The Court encouraged counsel to engage in meaningful settlement discussions. (ECF Nos. 69, 70). On March 7, 2014, following a lengthy telephone call between Plaintiff and Fryncko, the case was settled for $16,000 by Fryncko and Attorney Andrew Szefi ("Szefi"), who was also representing Defendants. (ECF No. 74). Subsequently, the Court was notified that the case had been settled. As such, the case was closed by Order dated March 10, 2014. (ECF No. 71). On the same date, Winikoff forwarded a draft settlement agreement and release to Fryncko. He requested two minor changes. Thereafter, the final settlement agreement, a vendor form and W-9 form were sent to Fryncko. (ECF No. 74 at ¶¶ 10-12).

On March 24, 2014, the Clerk of Court received a letter from Plaintiff stating there had been "a miscommunication" and that he never agreed to settle the case. (ECF No. 72). On April 2, 2014, Plaintiff filed a Motion to Reopen Claim (ECF No. 73). On the same date, Defendants file a Petition to Enforce Settlement and Response to Motion to Reopen Claim (the "Petition"). (ECF No. 74) Upon review of Plaintiff's Motion to Reopen Claim and Defendants' Petition, this Court ordered Plaintiff to file a response to the Petition by April 11, 2014. A Motion for Extension of Time was filed by Fryncko, and he was granted an extension of time until April 22,

---

[1] Plaintiff is incarcerated in the Restrictive Housing Unit ("RHU") of SCI-Smithfield. He is currently serving a state sentence of 10½ to 21 years. (ECF No. 79).

2

2014. (ECF No. 77). Fryncko filed a response (ECF No. 78), and a Motion to File Correspondence as Exhibits, ECF No. 84.[2] This Court scheduled a hearing on Plaintiff's Motion to Reopen Claim and Defendants' Petition for April 30, 2014. (ECF No. 77).

## II. PENDING MOTIONS

Presently before the Court are two motions filed by Plaintiff and Defendants relative to the settlement that was reported to the Court.

### A. Plaintiff's Motion to Reopen Claim (ECF No. 73)

Plaintiff seeks to reopen his case on the ground that he did not agree to settle his case for $16,000. Plaintiff asserts that he communicated a demand to Fryncko in the amount of $250,000 and that the condition that criminal charges be filed against Kovacs. Plaintiff then inquired about his counsel's assessment of a possible demand of $75,000 to $85,000. Plaintiff states that Fryncko informed him that he thought he could get $15,000 to $20,000 and that "he will take that offer." Plaintiff denies that he agreed to accept an offer in that amount. Plaintiff now seeks "to invalidate the settlement." (ECF No. 73).

### B. Defendants' Petition to Enforce Settlement and Response to Motion to Reopen Claim (ECF No. 74)

Defendants contend in the Petition to Enforce Settlement (the "Petition") that Fryncko engaged in serious settlement negotiations with counsel for Defendants with full authority from Plaintiff. (ECF No. 74 at ¶¶ 5, 6). They state that Fryncko met with Plaintiff at SCI-Smithfield and also spoke with him by telephone. (Id. at ¶ 7). Defendants further contend that Fryncko and Szefi agreed to settle the case for $16,000 with full authority from their respective clients. (Id. at ¶¶ 8, 9). An Affidavit from Fryncko supports the Petition and is attached as an exhibit to the Petition. (ECF No. 74-1).

---

[2] It is also noted that on April 23, 2014, Plaintiff filed a Motion for Leave to Proceed In Forma Pauperis and a Motion to Appoint Counsel. (ECF Nos. 79, 80).

3

## III. HEARING

The hearing on Plaintiff's Motion to Reopen Claim and Defendants' Petition was conducted on April 30, 2014, as scheduled. (ECF No. 83). Attorney Fryncko, as counsel of record for Plaintiff, and Attorneys Szefi and Winikoff, counsel for the Defendants, attended in person. Plaintiff participated in the hearing via videoconference from SCI-Smithfield.

The hearing commenced with the Court summarizing the chronology and current posture of the case. (ECF No. 89) (Tr. at 3-7).[3] The Court then heard from Plaintiff and the three attorneys who had been involved in the negotiation of the settlement.

### A. Attorney Kenneth Fryncko

Fryncko stated that he travelled to SCI-Smithfield and met with Plaintiff on three occasions. During each visit, Fryncko discussed with his client case strategy, damages, costs, risks at trial and settlement value. (Tr. at 11). These issues were also addressed via written correspondence. (ECF No. 74-1). The most recent in-person meeting took place in late February, 2014. (Tr. at 26).

Fryncko stated that he made special arrangements to conduct a telephone conference with Plaintiff on the morning of March 7, 2014, immediately prior to the commencement of the depositions of Defendant Kovacs and three other corrections officers. (Tr. at 11-12). He discussed with Plaintiff: his fiduciary duty to be a zealous advocate; the range where he believed that counsel for Defendants would move in settlement negotiations and the additional costs of the scheduled depositions and going to trial. As to settlement, Fryncko stated that he explained to Plaintiff where he thought counsel for Defendants would move in terms of a settlement offer. He

---

[3] The complete transcript of the hearing is filed on the docket at ECF No. 89. All references to the hearing transcript will be cited as (Tr. at __ ).

4

told Plaintiff that if the offer was over $15,000 that they should settle and Plaintiff responded "okay." Fryncko then repeated to his client that if the offer was over $15,000 that he was going to accept it and settle. According to Fryncko, Plaintiff again responded by saying "ok." They then said good-bye and ended the call. (Id.)

Later on the morning of March 7, 2014, Fryncko spoke with Szefi and a settlement offer was conveyed in the amount of $16,000. Given that the offer amount was in excess of $15,000, Fryncko accepted the offer on behalf of Plaintiff. (Tr. at 13). It is the position of Fryncko that he had full and complete authority from Plaintiff to accept the offer, to resolve the case to Plaintiff's benefit and that he acted pursuant to that express authority. (ECF No. 78).

**B. Plaintiff Robert Polzer**

Next, the Court heard from Plaintiff. He stated that he had 14 issues to bring before the Court. (Tr. at 10). Plaintiff began by declaring that he wants $250,000 and emphatically informing the Court that he wants to see Defendant Kovacs criminally charged for his physical assault of Plaintiff. The Court explained to Plaintiff that it had no jurisdiction or authority to direct or compel the filing of criminal charges against Defendant Kovacs and that such a decision belonged to the District Attorney of Allegheny County. (Tr. at 17-19). Plaintiff stated that he wants a civil jury trial to hold Defendant Kovacs accountable and he does not want any money. (Tr. at 16, 20 -21). Plaintiff also informed that Court that he disagreed with his counsel relative to other specific issues:

No. 4. the merits of his malicious prosecution claim (Tr. at 22-23);

No. 5. the existence of "Camera 7-843" (Tr. at 23);

No. 6. the attempt of Plaintiff's counsel to "hoodwink" Dr. Dophin, the treating psychiatrist, during his deposition (Id.);

5

No. 7. Fryncko stating that a $75,000 settlement offer was not going to happen (Id.);

No. 9. Fryncko asking him to respect his judgment and respect him as an attorney (Id.);

No. 10. Fryncko telling him that a client whose ear was bitten off was only awarded $1,000 (Tr. at 23-24);

No. 11. Fryncko stating that he was not going to take a minor lip scar in front of a jury (Tr. at 24); and,

No. 12. Fryncko stating that maybe if Plaintiff had not covered up his face to protect himself his injuries would have been more severe (Tr. at 24-25).

Plaintiff stated to the Court that at the end of the call, he did not agree to settle the case for over $15,000 or $16,000. He said the call ended with Fryncko asking Plaintiff to let him do his job and Plaintiff responded "okay." (Tr. at 24). Plaintiff took the position before the Court that when he said "okay," it was to letting Fryncko do his job, not to any settlement. (Tr. at 26).

In response to questions from the Court, Plaintiff acknowledged that Fryncko had made "multiple" trips to meet with him in person at SCI-Smithfield and that the last visit had been in late February 2014. (Tr. at 27-28). He acknowledged that Fryncko had made special arrangements to have a telephone call with him on March 7, 2014, prior to the start of the four scheduled depositions that day. (Tr. at 28-29). Plaintiff testified that the call lasted for 15 or 20 minutes. (Tr. at 29). He admitted that Fryncko told him that he would incur additional expenses taking the depositions and at trial that would decrease the amount of Plaintiff's recovery. (Tr. at 33). Plaintiff also admitted that Fryncko discussed his fiduciary duty to represent Plaintiff's best interests during the March 7, 2014 telephone call. (Tr. at 31).

### C. Attorneys Andrew Szefi and Stanley Winikoff

Attorneys Szefi and Winikoff, as counsel for Defendants, informed the Court that Szefi negotiated a settlement with Fryncko relative to Plaintiff's claims. The settlement was agreed to in a telephone call between the two attorneys. (Tr. at 7-8). The settlement agreement was in the amount of $16,000. Winikoff prepared the settlement agreement, including a full release of all claims, based on the terms agreed to by Szefi and Fryncko. (Id.) The draft settlement agreement was provided to Fryncko and he requested a correction of the spelling of his name and that the settlement check be made payable to his law firm. (Tr. at 8).

## IV. DISCUSSION

It is well settled that a district court has jurisdiction to enforce a settlement agreement entered into by parties to a case pending before it. McCune v. First Judicial District of Pa. Prob. Dep't, 99 F. Supp. 2d 565, 566 (E.D. Pa. 2000); Pugh v. Super Fresh Foods Market, Inc., 640 F. Supp. 1306, 1307 (E.D. Pa. 1986); Rosso v. Foodsales, Inc., 500 F. Supp. 274, 276 (E.D. Pa. 1980).

The enforceability of a settlement agreement in federal court is governed by state law. Trian Group Ltd. Partnership v. Accident and Cas. Ins. Co. of Winterthur, Civ. A. No. 98-1026, 2006 U.S. Dist. LEXIS 4293, at *3 (D.N.J. June 26, 2006). Under Pennsylvania law, the enforceability of a settlement agreement is governed by the principles of contract law. Max Control Sys., Inc. v. Industrial Sys., Inc., Civ. A. No. 99-2175, 2001 U.S. Dist. LEXIS 15857, at *2 (E.D. Pa. July 30, 2001) (citing Mazzella v. Koken, 739 A. 2d 531, 536 (Pa. 1999)). It is therefore essential to the enforceability of a settlement agreement, as it is with any contract, that "the minds of the parties shall meet upon all the terms, as well as the subject matter, of the [agreement]." (Id.) "An agreement to settle a lawsuit, voluntarily entered into, is binding upon

the parties, whether or not made in the presence of the court, and even in the absence of a writing." Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970) (citing Good v. Pennsylvania R.R. Co., 384 F. 2d 989 (3d Cir. 1967)). Even an oral agreement to settle, which is reached outside the presence of the court is binding. Mercer v. Richardson Brands, Inc., Civ. A. No. 91-4033, 1992 U.S. Dist. LEXIS 9302, at *2 (E.D. Pa July 2, 1992). It is immaterial that a party ultimately refused to sign the written agreement. Suber v. Peterson, Civ. A. No. 04-1896, 2006 U.S. Dist. LEXIS 36685, at *2-4 (E.D. Pa. June 2, 2006).

There is a rebuttable presumption that a settlement entered into by an attorney was authorized by the client. Garabedian v. Allstates Engineering Co., 811 F.2d 802, 803 (3d Cir. 1987). "Once the client has authorized the lawyer to settle the case, and the lawyer has done so, the client may not whimsically renege on [his] promise and refuse to uphold [his] end of the bargain." Anderson v. United States Postal Serv., Civ. A. No. 97-3112, 1998 U.S. Dist. LEXIS 1735, at *3 (E.D. Pa. Feb. 19, 1998). This rule applies to parties who agree to settle and change their mind before signing a written settlement agreement. Bailey v. City of Philadelphia, Civ. A. No. 00-5002, 2003 U.S. Dist. LEXIS 2195, at *6 (E.D. Pa. Feb. 13, 2003) (aff'd, 90 F. App'x 434 (3d. Cir. 2004)).

Once the presumption that a settlement entered into by an attorney was authorized by a client is challenged, the court must find that the attorney had the express authority to settle. Tiernan v. Devoe, 923 F.2d 1024, 1033 (3d Cir. 1991) (stating that authority to settle does not arise merely from the fact of representation, but must be the result of explicit instructions regarding settlement).

Under Pennsylvania law, "an attorney must have express authority in order to bind a client to a settlement agreement." Gatto v. Verizon of Pa., Civ. A. No. 08-858, 2009 U.S. Dist.

8

LEXIS 86601, at *7 (W.D. Pa. Sept. 22, 2009); Reutzel v. Douglass, 870 A.2d 787, 790 (Pa. 2005) (citing Rizzo v. Haines, 555 A. 2d 58, 66 (Pa. 1989); Archbishop v. Karlak, 299 A.2d 294 (Pa. 1973); Starling v. West Erie Ave. Bldg. & Loan Ass'n, 3 A.2d 387 (Pa. 1939); McLaughlin v. Monaghan, 138 A. 79 (Pa. 1927)). "The rationale for this rule stems from the fact that parties settling legal disputes forfeit substantial legal rights, and such rights should only be forfeited knowingly." Id. (citing Starling v. West Erie Ave. Bldg. & Loan Ass'n, 3 A.2d 387, 388 (Pa. 1930)("apparent or implied authority does not extend to unauthorized acts which will result in the surrender of any substantial right of the client, or the imposition of new liabilities or burdens upon him")).

Based on the foregoing, in the context of considering motions to enforce settlement agreements, courts have consistently held that "when the determination of whether an attorney was authorized to settle a case hinges on factual issues and credibility determinations, a hearing should be held." Transport International Pool, Inc. v. Alternative Transport, Inc., Civ. A. No. 07-2895, 2008 U.S. Dist. LEXIS, at *6 (E.D. Pa June 25, 2008) (citing Garabedian, 811 F.2d at 803; Suber, 2006 U.S. Dist. LEXIS, at *3). At such a hearing, the party seeking to enforce a purported settlement agreement bears burden of proving that the plaintiff granted to his attorney the authority to into the settlement. Mowrer v. Warner-Lambert Co., Civ. A. No. 98-2908, 2000 U.S. Dist. LEXIS 9874 (E.D. Pa. July 13, 2000).

In this case, the Court conducted a hearing on April 30, 2014, as to Plaintiff's Motion to Reopen Claim and Defendants' Petition. In considering the filings of the parties and the evidence and argument presented to the Court during the hearing, it appears that there are substantial undisputed facts. Both Plaintiff and Fryncko acknowledge that they had a lengthy discussion about settlement during the telephone call on March 7, 2014, prior to the depositions

9

of Defendant Kovacs and three other corrections officers.  However, this Court is faced with two versions of what took place towards the end of the 15 to 20 minute telephone conversation. Fryncko states that he explained to Plaintiff the range of where he believed that he could get Defendants to move in terms of a settlement offer and that he told Plaintiff that if the offer was over $15,000 that they should settle.  Fryncko states that Plaintiff responded by saying "okay." Fryncko then repeated that if the offer was over $15,000 that he was going to accept it and Plaintiff again responded by saying "okay."  Plaintiff admits that the end of the call did involve discussion of settlement and the expected range of an offer.  However, Plaintiff contends that his response of "okay" at the end of the call was not an agreement to accept a settlement offer, but was simply an agreement to allow his counsel to do his job.  Therefore, the issue before this Court is whether Fryncko had Plaintiff's express authority to enter into a settlement agreement if Defendants made an offer in excess of $15,000.

In considering the conflicting evidence presented by Plaintiff, Fryncko and Defendants, this Court must determine which witness is credible.  In order to make a determination of credibility, the Court observed the demeanor and reactions of the witnesses and compared the testimony with the filings and exhibits.  The Court also considered the responses provided to the Court's questions of Plaintiff and Fryncko.

The Court finds that the testimony of Plaintiff and Fryncko is substantially consistent as to:  the discussion of Fryncko's advocacy on behalf of Plaintiff, his fiduciary duty, the costs of litigation and the difficult of proving damages.  The inconsistency of the testimony is as to the discussion near the conclusion of the telephone call.

After thoroughly considering all of the evidence and the credibility of the witnesses, the Court accepts Fryncko's version of the telephone conversation and finds that when Plaintiff said

"okay" twice near the end of the telephone call on March 7, 2014, that he authorized his attorney to accept an offer in excess of $15,000. The Court further finds that after Plaintiff authorized Fryncko to settle the case that a few days later he apparently changed his mind. On March 10, 2014, Plaintiff wrote a letter to Fryncko stating, among other things, that: he will not accept a $15,000 settlement; he is very stubborn when he knows he is right; he is not a manipulator; and he now wants damages argued for of "a million dollars more or less." (ECF No. 84-1). Upon receipt of the letter, Fryncko promptly responded by letter dated March 13, 2014. In the letter, he informed Plaintiff that: "at the conclusion of our communication you gave me verbal authority to settle your case for an amount in excess of $15,000. That goal has been achieved. The docket is administratively closed. The case has been settled for $16,000." He further stated that "when we last spoke we were on the same page and I acted accordingly." (ECF No. 84-2).

In situations such as this, courts have consistently held that as a general rule, one party's change of heart subsequent to a settlement agreement does not vitiate a previously agreed upon settlement. Mercer v. Richardson Brands, Inc., Civ. A. No. 91-4033, 1992 U.S. Dist. LEXIS 9302, at *3 (E.D. Pa. July 2, 1992); Gross v. Penn. Mut. Life Ins. Co., 396 F. Supp. 373, 375 (E.D. Pa. 1975) ("[P]laintiff had a change of heart between the time he agreed to the terms of settlement and when they were reduced to writing …. Here, plaintiff acted too late. The bargain had already been struck on his terms").

In light of this Court's finding that Plaintiff expressly authorized his attorney to accept a settlement offer in excess of $15,000, the settlement agreement became enforceable when Attorney Szefi made an offer in the amount of $16,000 and Attorney Fryncko accepted it as authorized by Plaintiff on the morning of March 7, 2014.

Finally, the Court recognizes that Plaintiff feels strongly about his claims and desire to have Defendant Kovacs criminally prosecuted as demonstrated during his participation in the hearing. However, as stated during the hearing, this Court does not have jurisdiction to effectuate a state prosecution of Defendant Kovacs. As such, the Court hopes that Plaintiff is able to find some closure in the settlement.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Reopen Claim (ECF No. 73) is denied and Defendants' Petition to Enforce Settlement (ECF No. 74) is granted. This Court retains jurisdiction to enforce the terms of the settlement.

**ORDER**

AND NOW, this 15th day of July, 2014, IT IS HEREBY ORDERED that Plaintiff's Motion to Reopen Claim (ECF No. 73) is DENIED and Defendants' Petition to Enforce Settlement (ECF No. 74) is GRANTED. In accord with the terms of the settlement, this case is dismissed with prejudice.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he or she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

BY THE COURT,

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All Counsel of Record Via CM-ECF